### No. 38,259

DAVID H. MILLER, et al., *Plaintiffs,* v. AMELIA STOPPEL; BEN HEINZE; CARL HEINZE; LEAH FEIL; META JANNE; DANIEL W. STEINLE; MARLYN STEINLE; FRANCIS STEINLE and JERRY STEINLE, minor heirs at law of Marie Steinle, deceased; and DANIEL W. STEINLE, as guardian of said minors, *Appellants,* v. EMMA HARMISON, FRANK HARMISON, HARRY FREDERICK KASTRUP; KARL GERHARDT KASTRUP and MARIE FRANCES BRACK, *Appellees.*

(241 P. 2d 488)

Opinion filed March 8, 1952.

*Oscar Ostrum,* of Russell, argued the cause, and *Dean G. Ostrum, C. R. Holland* and *Marvin H. Thompson,* all of Russell, were with him on the briefs for the appellants.

*Jerry E. Driscoll,* of Russell, argued the cause, and *Richard M. Driscoll,* of Russell, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was a quiet title action. From a judgment rendered in favor of one group of defendants, the remaining defendants appeal.

In a preliminary way we note that in considering disposition of this appeal, the dates when various conveyances of real estate were made, as well as the dates various pleadings were filed, are important.

The facts giving rise to the action are summarized.

1. Prior to June 4, 1904, Gerhard F. W. Kastrup was the owner of the Southwest Quarter of Section 13, Township 15, Range 12, West, in Russell County.

2. On June 4, 1904, Gerhard F. W. Kastrup and Emma his wife executed and delivered to Herman Kaufmann, George Buhler and Theodore Janne, trustees of the Evangelical Lutheran Immanual Congregation, and their successors in office, the following described real estate under conditions stated, viz:

"A certain tract of land described as follows, to-wit: Beginning at a place 35 rods east of the southwest corner of Section 13, in Township 15, Range 12 West, thence going west 35 rods on the south line of said section to the southwest corner of said section, thence due north on the west line of said Section 61 rods, thence due east 31 rods, thence south to the south line of said section to the place of beginning, containing 12 acres and 93 rods of land. The condition of this deed is such that at any time said land ceased to be used for and by said Evangelical Lutheran Immanual Congregation for the use of public worship as set forth in its charter dated January 12th A. D. 1898, then said land shall revert back to said quarter section from which it was taken and all improvements put on said land may be removed from said land by the trustees of said Evangelical Lutheran Immanual Congregation."

3. On September 7, 1908, Gerhard F. W. Kastrup executed and delivered to Emma Kastrup a warranty deed to other land and the southwest quarter of the above mentioned section 13, except 12.93 acres in the southwest corner theretofore deeded to the above named trustees. "Together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

4. On February 17, 1910, in accordance with a postnuptial agreement between them of the same date Gerhard F. W. Kastrup executed and delivered to Emma Kastrup a warranty deed to the southwest quarter of the above section 13. This deed contained no reservations or exceptions.

5. On June 17, 1913, Emma Harmison, formerly the wife of Gerhard F. W. Kastrup, and Frank Harmison, her husband, entered into a written contract to sell to Fred·Heinze, the southwest quarter of the above section 13 "except about 12 acres in the southwest

corner owned by the German Lutheran Church" and on September 25, 1913, they executed and delivered a warranty deed to Heinze conveying the southwest quarter of section 13, "less 12 acres and 93 rods, in the southwest corner."

6. Fred Heinze, the grantee above named, died about December 5, 1913, leaving as his heirs his children Leah Feil, Marie Steinle, Amelia Stoppel, Meta Janne, Carl Heinze and Ben Heinze. Marie Steinle later died at some undisclosed date and as to her interest the action to quiet title was revived in the names of her husband and three children. The persons included in this paragraph are the appellants in this court.

7. On November 6, 1944, Emma Harmison and her husband executed a quitclaim deed, conveying to Harry Frederick Kastrup, Karl Gerhardt Kastrup and Marie Frances Brack, all the mineral rights under the same tract of land containing 12 acres and 93 rods as described in the deed to the trustees of the Church.

8. On November 6, 1944, Emma Harmison and her husband executed and delivered to Karl Gerhardt Kastrup a quitclaim deed to the lands last mentioned, subject to the conveyance of mineral rights in and under the lands of even date to the three persons above mentioned.

The persons included in the last two deeds are the appellees in this court.

On August 29, 1941, the plaintiffs commenced an action to quiet title to the lands as described in the deed noted at No. 2 above. The abstract filed in this court is prepared in such manner that we cannot determine from the petition, but do deduce from other proceedings that plaintiffs were successor trustees for the Congregation. Neither is there any showing as to what persons were named as defendants, although it is obvious that when the petition was filed some of those now denominated as defendants had as of that date no interest in the subject matter of the suit. In the petition there was a general allegation that the defendants claim some interest in the real estate, the claims constituting a cloud on the title. It was alleged also that the real estate was conveyed to the original trustees of the Congregation and that when the tract should no longer be used for church purposes it should revert to the quarter section of which it was originally a part. Apparently some land in an adjoining section had been described in the petition and not shown in the abstract for it was alleged that both conveyances were

made before there was any contemplation by the grantors or grantees of the possibility of oil and gas development and that at the time of the filing of the petition plaintiffs could derive profits from leasing the tracts for oil and gas development which profits would inure to the benefit of the Church and used in furthering of church and public worship. It was further alleged that plaintiffs should be adjudged the owners in fee simple and their title quieted and that their right to lease the land for oil and gas development should be deemed not to come within the restrictions of the deed by which they claimed title, and they prayed for such relief.

The abstract does not disclose with any certainty that any defendant who may have been named in the action as originally instituted filed any answer or other pleading. It does disclose that almost six years after the petition was filed and on June 14, 1947, Karl Gerhardt Kastrup, denominating himself a defendant but whose rights could not have accrued until November 6, 1944, in No. 8 above, filed an answer admitting that plaintiffs claimed ownership of the surface and mineral rights under the deed of June 4, 1904 (No. 2 above), and that a portion of the real estate, being the surface rights, was being used for church purposes; that subject to the rights of the plaintiffs, defendant owned in fee simple all of the lands described in No. 2 above subject to the conveyance of the mineral rights to Harry Frederick Kastrup, Karl Gerhardt Kastrup and Marie Frances Brack under the deed referred to at No. 7 above, and prayed that he be adjudged to be the owner in fee simple and his title quieted.

On the same day, June 14, 1947, Harry Frederick Kastrup, Karl Gerhardt Kastrup and Marie Frances Brack, denominating themselves as defendants, but whose rights accrued after the petition was filed (see No. 7 above), filed their answer admitting plaintiffs' ownership in the land and that the surface rights were being used for church purposes, alleging that they (defendants) were joint owners, as tenants in common, of the mineral rights under the real estate under the deed mentioned in No. 7 above, and praying that their title be quieted as against the plaintiffs and the defendants.

On September 20, 1947, Dan W. Steinle, and Marlyn Steinle, Francis Steinle and Jerry Steinle by their guardian Daniel W. Steinle, filed replies to the two answers above noted in which they admitted that plaintiffs claimed ownership of the surface and mineral rights in the lands as described in No. 2 above, admitted the

execution of the deeds to the defendants as alleged in their answers, but specifically denied that those defendants acquired any right, title or interest in the real estate. They prayed that defendants Kastrup, Kastrup and Brack be denied relief under their answers.

On September 20, 1947, Amelia Stoppel, Ben Heinze, Carl Heinze, Leah Feil and Meta Janne, denominating themselves defendants, filed a reply to the answer of Kastrup, Kastrup and Brack, making the same admissions and praying for the same relief as contained in the Steinle replies mentioned above.

To avoid repetitious statement of names we shall refer hereafter to the one group of defendants as the Kastrups and to the other as the Heinze heirs.

The abstract discloses that after the opening statement of the Kastrups, which is not set forth, the trial court inquired whether more than reversionary rights were involved and whether present rights in minerals were involved and their counsel answered they were but no one was questioning the rights of the Church (plaintiffs). Counsel for the Heinze heirs stated no one was questioning the present use of the surface for church purposes and counsel for the Kastrups then stated that the church claimed it was entitled to the use of the land for all purposes. After counsel for the Heinze heirs made his opening statement the trial court asked if it was contended the church had more than an easement in the land and counsel for Kastrups said, "I will answer that for the protection of the church. I will say yes." At the oral argument before us counsel expressly stated he did not then represent the Church (plaintiffs). As result of further colloquy between the trial court and counsel it became clear that the controversy between the two groups of defendants was whether the Kastrups were the owners of what they denominated reversionary mineral rights or whether the Heinze heirs had the present mineral rights and also reversionary rights in and to the minerals and the surface, the surface being subject to the right of the plaintiffs to use the land for church purposes.

It may here be said that there is nothing in the record as abstracted to indicate whether the plaintiffs, six years after they filed their petition, had anything more than constructive notices of the filing of the answers and replies, or were advised that a trial would be had. At the trial the evidence consisted solely of instruments of title of record as above noted. The journal entry of judgment, which

covers all proceedings from the commencement of the trial on May
May 6, 1948, to the overruling of a motion for a new trial on May
10, 1950, shows no appearance for plaintiffs nor any explanation of
their absence further than evidenced by the following statement:

"It is conceded by the defendants now appearing that said property is being
used for church purposes by the plaintiffs and their use for such purpose is
not contested. The plaintiffs appear to have dropped all claims to the mineral
rights so that the issues are now between the defendants as to the ownership
of the right of reversion and to the mineral under said tract."

Included in the journal entry are findings of fact made July 27,
1949, as to the conveyances noted and as above set forth, as well
as to lands in other sections and not presently involved. In its
conclusions of law the trial court held that the deed of June 4, 1904,
(No. 2 above), did not convey any right, title or interest in the oil,
gas or other *materials* in and under the tract; that the real matter
in controversy concerned the ownership of the rights of reversion
in the lands conveyed by the above deed and the minerals in and
under the tract described and that it was undisputed they vested
in Emma Kastrup by the deed mentioned at No. 4 above; that
the deed to Heinze at No. 5 above excepted the tract involved;
that the right of reversion vested in Karl Gerhardt Kastrup by the
deed noted at No. 8 above and the mineral interests are vested in
Kastrup, Kastrup and Brack, grantees in the deed noted at No. 7
above, and that their title should be quieted as against the other
parties to the action. After reciting the findings of fact and con-
clusions of law just mentioned, the journal entry recites:

". . . thereupon the court renders judgment in said cause in favor
of defendants, Kastrup, et al., and against defendants, Amelia Stoppel, et al.,
(Heinze heirs) in accordance with the findings of fact and conclusions of law
heretofore filed by the court in said case; . . ."

It is noted that no judgment was rendered against the plaintiffs.

The journal entry further discloses that the Heinze heirs filed
their motion for a new trial on September 2, 1949, and that it was
overruled on May 10, 1950.

Later the Heinze heirs served a notice of appeal on Emma
Harmison and her husband, and on the Kastrup heirs and their at-
torneys of record, from the judgment of August 31, 1949, and the
ruling of May 10, 1950, on their motion for a new trial. There was
no service on the plaintiffs although an attempt is made to affect
their rights. Perhaps such service was not required under G. S.

1949, 60-3306, especially in view of the fact no judgment was rendered against the plaintiffs.

Notwithstanding the precise terms of the judgment rendered, in this court the substance of the main contention of the appellants is that the reversion in the deed to the Congregation as set out in No. 2 above was to the quarter section of which the land conveyed was a part, and not a reversion to the grantors in that deed, and that by reason of the deed to Heinze the appellants, as his successors in title, were entitled to the reversion. Appellees, directing attention to the language of the deed shown at No. 3 above, argue that by it any reversion under the deed at No. 2 passed to Emma Kastrup and from her to them under the deed at No. 7. In the contentions by both appellants and appellees, it seems assumed that the plaintiffs had only surface rights in the lands conveyed to them by the deed at No. 2.

We are of the opinion that the contentions as made need not be discussed.

Confining attention for the moment to the extent of interest acquired by the plaintiffs or their predecessors in trust under the deed at No. 2, it may be noted that that is to be determined from an examination of the deed and that we are in as good position as was the trial court to make such a determination. An examination of that deed shows that the entire fee, and not some portion of it, passed to the grantees, and were it not for the reversionary clause, they could have sold the entire fee without let or hindrance. The trial court's conclusion of law that this deed did not convey any right, title or interest in the oil, gas and other materials (minerals?) in and under the tract conveyed, or stated another way, that plaintiffs only had surface rights, cannot be and is not approved and sustained. We hold that this deed conveyed the entire fee, subject to a reversion if the land cease to be used by the Congregation for use of public worship.

Insofar as rights of reversion are concerned any attempted determination of who would take the reversion is premature, for it is conceded there has been no cessation of use by the Congregation and at this time no person is entitled thereto. It need not be elaborated that a reversioner's right of entry must have accrued before the statute of limitations runs against him, 31 C. J. S. 127, et seq., and 33 Am. Jur. 695, et seq., and of course the statute could not begin to run until he had a cause of action. As there has been

no cessation of use, obviously appellants cannot now be declared owners on the theory advanced by them—for if the reversion is to the quarter section of land and not to the original grantor Kastrup, it would be to the owners at the time there was cessation of use by the Congregation. That not having occurred, no one knows now who would be the owner. Nor may appellees be said to be in any better position because first there is presently no reversion, and second until there is no one knows who may be entitled to litigate the question under the theory advanced by the appellants. Of course there is always a possibility the Congregation will cease to use the real estate for purposes of public worship, but until that occurs no one entitled to the reversion has any cause of action to recover possession and there can be no effective determination as to who may be entitled to the tract involved.

Under G. S. 1949, 60-3317, this court is directed on appeal to "render such final judgment as it deems that justice requires . . . without regard to technical errors and irregularities in the proceedings of the trial court."

The court is of the opinion that justice requires there be a final judgment quieting the title of the plaintiffs to the lands described in the deed at No. 2, subject to the reversionary condition contained in that deed and barring defendants from asserting any present right, title or interest in and to such real estate.

The judgment of the trial court is reversed, vacated and set aside and the cause remanded with instructions to render judgment in accordance herewith.